1

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7               **FOR THE EASTERN DISTRICT OF CALIFORNIA**

8

9    PACIFIC MARINE CENTER, INC.              CASE NO. CV F 09-1409 LJO GSA
     et al.,
10                          Plaintiffs,        **ORDER ON MOTIONS TO DISMISS**
                                               **FIRST AMENDED COMPLAINT**
11          vs.

12   SCOTT SILVA, TOM WILSON,
     E. ESSEGIAN,
13
                            Defendants.
14   _____/

15          Pending before the Court are two motions to dismiss made pursuant to Fed.R.Civ.Proc. 12(b)(6).

16   Defendant Edward Essegian moves to dismiss the First Amended Complaint and to strike portions of

17   the complaint pursuant to Fed.R.Civ.Proc. 12(b)(6) and 12(f).  (Doc. 21.)  Defendants Scott Silva and

18   Tom Wilson move to dismiss the First Amended Complaint pursuant to Rule 12(b)(6).  (Doc. 25.)

19   Plaintiffs Pacific Marine Center, Inc. and Sona Vartanian filed an opposition to the Edward Essegian

20   motion on November 10, 2009 (Doc. 28) and to the Scott Silva and Tom Wilson motion on November

21   10, 2009.  (Doc.  29.)  Defendant Essegian filed a reply brief on November 16, 2009.  (Doc. 30.)

22   Defendants Silva and Wilson filed their reply brief on November 16, 2009.  (Doc. 31.)  Pursuant to

23   Local Rule 78-230(h), these motions were submitted on the pleadings without oral argument.  Therefore,

24   the hearing set for December 7, 2009 is VACATED.  Having considered the moving, opposition and

25   reply papers, as well as the Court's file, the Court issues the following order.

26                              **FACTUAL OVERVIEW**

27          The First Amended Complaint ("FAC") alleges plaintiffs Pacific Marine Center, Inc. and Sona

28   Vartanian bring this action based upon a search warrant that was executed at the business of plaintiff

                                          1

Pacific Marine on August 10, 2009.  Defendant Scott Silva is an investigator for the Department of Motor Vehicles ("DMV").  (Doc. 20, FAC ¶6.)  Defendant Tom Wilson is the supervisor for the investigative department of DMV and Silva's supervisor.  (Doc. 20, FAC ¶7.)   Defendant Edward Essegian is a deputy sheriff for the County of Fresno.  (Doc. 20, FAC ¶8.)

Silva sought and obtained a search warrant to search Pacific Marine's business premises on August 10, 2009.  (Doc. 20, FAC ¶11.)  Silva obtained the warrant by swearing in an affidavit that probable cause existed of items stolen or embezzled, used to commit a felony at the Pacific Marine business premises.  (Doc. 20, FAC ¶¶12, 21.)  The warrant identified documents to be seized as "any and all Dealer Jackets . . .  and any other document which may show criminal activity pertaining to purchase and/or sale of vehicles.  All completed warranty contracts for, but no[t] limited to Passport warrant company."  Other documents, such as "books, records, receipts, bank statement . . .," 'answering machines," "'identity documents for indicia of residency" were also covered by the Search warrant. (Doc. 20, FAC ¶¶14-18.)

Plaintiffs allege that the defendants began "ransacking the entire business office and throwing files and records in disarray."  (Doc. 20, FAC ¶27.)  Plaintiffs allege that Essegian brandished his unholstered weapon at Vartanian and would not permit her to open the cash register.  (Doc. 20, FAC ¶26.)  Plaintiffs allege that defendants took the personal records of Sona Vartanian and her personal computer and did not record the property on the property receipt.  (Doc. 20, FAC ¶27.)  Plaintiffs allege that Sona Vartanian's property was not within the scope of the warrant.  Plaintiffs allege that defendants took other records not related to Pacific Marine and did not record that property on the property receipt.  (Doc. 20, FAC ¶27.)  Plaintiffs allege that these other records were not within the scope of the warrant.  Plaintiff allege that Essegian and Wilson searched the personal vehicle of Vartanian and her brother.  (Doc. 20, FAC ¶29.)  Plaintiffs also allege that defendant destroyed the business' security monitoring system.  (Doc. 20, FAC ¶30.)

Plaintiffs allege that the warrant was based upon false information given by Defendant Silva.  Plaintiffs further allege that documents were seized that were "beyond the scope of the search warrant" because the warrant referred to "criminal activity" pertaining to "the purchase and/or sale of vehicles," and Pacific Marine Center, Inc. "was in the business of selling vessels [boats] not vehicles."  (Doc. 20,

FAC ¶39.) Plaintiffs further allege that defendants Wilson and Silva gave statements to the media which included false statements about Sona Vartanian and Pacific Marine Center, Inc. that they sold warranties to customers but never provided the warranties.  (Doc. 20, FAC ¶23, 32.)

Plaintiffs allege the following causes of action:

1.   First Cause of Action for Fourth Amendment violation for unreasonable search and seizure.

2.   Second Cause of Action for defamation in violation of the Fourteenth Amendment. Defendant Essegian moves to dismiss the first cause of action and moves to strike portions of the complaint. Defendants Silva and Wilson move to dismiss the second cause of action.

## ANALYSIS AND DISCUSSION

**A.      Standard for Motion to Dismiss**

A motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the pleadings set forth in the complaint.  A Fed. R. Civ. P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).  In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations of the complaint in question, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor.  *Lazy Y. Ranch LTD v. Behrens,* 546 F.3d 580, 588 (9th Cir. 2008); *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969).

To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007). A claim has facial plausibility,"when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, – U.S. –, 129 S.Ct. 1937 (2009).  "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

A court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Services v.*

3

*American State Bank*, 339 F.3d 765, 767 (8th Cir. 2003) (citation omitted).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (internal citations omitted).  Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action."  *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969.  If a plaintiff fails to state a claim, a court need not permit an attempt to amend a complaint if "it determines that the pleading could not possibly be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

**B.       Standards for Motion to Strike**

Fed. R. Civ. P. 12(f) empowers a court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter."  Motions to strike may be granted if "it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation."  *LeDuc v. Kentucky Central Life Ins. Co.*, 814 F.Supp. 820, 830 (N.D. Cal. 1992); *Colaprico v. Sun Microsystems, Inc.*, 758 F.Supp. 1335, 1339 (N.D. Cal. 1991).  "[T]he function of a Rule 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."  *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983); *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 114 S.Ct. 1023 (1994).  "[A] motion to strike may be used to strike any part of the prayer allege relief when the damages sought are not recoverable as a matter of law."  *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1479, n. 34 (C.D. Cal. 1996).

**C.       First Cause of Action Fourth Amendment - Search Warrant Validity**

Defendant Essegian argues that plaintiffs fail to plead that he violated the Fourth Amendment. Defendant Essegian argues that he was not the search warrant affiant, and that he relied upon the facial validity of the warrant in executing it.

4

1          **1.      Search Warrant Standards - Probable Cause**

2          California Penal Code section 1524(a)(4) authorizes a search warrant's issuance when "the

3   property or things to be seized consist of any item or constitute any evidence that tends to show a felony

4   has been committed, or tends to show that a particular person has committed a felony."  In assessing

5   whether a warrant passes constitutional muster, a court is obliged to make two inquiries: first, whether

6   the scope of the search authorized by the warrant was justified by probable cause and, second, whether

7   the warrant was sufficiently particular to limit the discretion of the officers executing it.  *In re Grand*

8   *Jury Investigation Concerning Solid State Devices, Inc.*, 130 F.3d 853, 856 (9th Cir. 1997).

9          In making a probable cause determination, a court's role is to ensure that the judge issuing the

10  search warrant had a "substantial basis" to conclude probable cause existed.  *Illinois v. Gates*, 462 U.S.

11  213, 103 S.Ct. 2317, 2332 (1983); *United States v. Hendricks*, 743 F.2d 653, 654 (9th Cir. 1984), *cert.*

12  *denied*, 470 U.S. 1006, 105 S.Ct. 1362 (1985).  "The task of the issuing magistrate is simply to make

13  a practical, common sense decision whether, given all the circumstances set forth in the affidavit before

14  him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there

15  is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Gates*,

16  462 U.S. at 238, 103 S.Ct. 2317.

17         "[I]t is clear that 'only the probability, and not a prima facie showing, of criminal activity is the

18  standard of probable cause.'"  *Gates*, 462 U.S. at 235, 103 S.Ct. 2317 (quoting *Spinelli v. United States*,

19  393 U.S. 410, 419, 89 S.Ct. 584 (1969)).  "The facts . . . must be sufficient to justify a conclusion . . .

20  that the property which is the object of the search is probably on the person or premises to be searched

21  at the time the warrant is issued."  *Durham v. United States*, 403 F.2d 190, 193 (9th Cir. 1968).  In

22  determining whether a search warrant is supported by probable cause, the crucial element is not whether

23  the target of the search is suspected of a crime, but whether it is reasonable to believe that the items to

24  be seized will be found in the place to be searched.  *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 & n.

25  6, 98 S.Ct. 1970, 1976-1977 & n. 6 (1978); *United States v. Lalor*, 996 F.2d 1578, 1582 (9th Cir.), *cert.*

26  *denied*, 510 U.S. 983, 114 S.Ct. 485 (1993).  "The magistrate making the original determination of

27  probable cause is accorded significant deference by the reviewing court."  *United States v. Fulbright*,

28  105 F.3d 443, 452 (9th Cir. 1996), *cert. denied,* 520 U.S. 1236 (1997).

1    Here, as to defendant Essegian, plaintiff does not plead that defendant Essegian bears any

2    responsibility for the probable cause stated in the warrant.  Plaintiffs acknowledge that defendant

3    Essegian's liability arises solely from the execution of the warrant: "Defendant is not being held liable

4    for lack of probable cause." (Doc. 28, Opposition p.2.)

5         **2.    Challenges pursuant to Illegal Search and Seizure**

6    Here, the opposition acknowledges that Essegian's role is limited to that of the executing officer.

7    Plaintiffs allege that defendant Essegian is sued in his individual capacity and that he was one of the

8    officers who executed the warrant. (Doc. 20, FAC ¶8.)  Plaintiff's argue that he is sued for brandishing

9    his unholstered weapon at Vartanian, ransacking the business and files and destroying property.  (Doc.

10   28, Opposition p. 2.)  Plaintiffs allege that he searched beyond the scope of the warrant, by taking

11   records not within the warrant and searching locations not covered by the warrant.  (Doc. 28, Opposition

12   p.3.)  Plaintiffs argue that Essegian's unreasonable conduct is adequately plead and that resolution of

13   the disputed facts is for the trier of fact.

14   The FAC alleges that defendant Essegian engaged in wrongful conduct during the search.

15        **a.    Destruction of Property**

16   "[O]fficers executing search warrants on occasion must damage property in order to perform

17   their duty." *Dalia v. United States*, 441 U.S. 238, 99 S.Ct 1682 (1979).  "Destruction of property that

18   is not reasonably necessary to effectively execute a search warrant may violate the Fourth Amendment."

19   *Tarpley v. Greene*, 684 F.2d 1 (D.C. Cir. 1982).  "The general touchstone of reasonableness which

20   governs Fourth Amendment analysis, … governs the method of execution of [a search] warrant.

21   Excessive or unnecessary destruction of property in the course of a search may violate the Fourth

22   Amendment, even though the entry itself is lawful and the fruits of the search not subject to

23   suppression." *U.S. v. Ramirez*, 523 U.S. 65, 71, 118 S. Ct. 992, 140 L. Ed. 2d 191 (1998) ("[e]xcessive

24   or unnecessary destruction of property in the course of a search may violate the Fourth Amendment,

25   even though the entry itself is lawful." ); *See  Liston v. County of Riverside*, 120 F.3d 965, 979 (9th Cir.

26   1997) ("only unnecessarily destructive behavior, beyond that necessary to execute a warrant effectively,

27   violates the Fourth Amendment").   "An officer's conduct in executing a search is subject to the Fourth

28   Amendment's mandate of reasonableness from the moment of the officer's entry until the moment of

1  departure." *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose,* 402 F.3d 962, 971

2  (9th Cir.), *cert denied,* 546 U.S. 1061 (2005).  Therefore, the touchstone of conduct during a search is

3  "reasonableness."

4      Plaintiffs have alleged conduct which may go beyond "reasonableness" to execute the warrant.

5  Plaintiffs have adequately plead that defendant Essegian unnecessarily destroyed property during the

6  search.  Plaintiff alleges that the business was "ransacked" and all of the business documents were

7  thrown about the business premises, and the surveillance equipment was ripped from the wall.  In his

8  motion, Essegian asks the Court to make factual determinations that Essegian was justified in doing the

9  things alleged in the complaint as part of the scope of the search.  Whether the conduct was necessary

10 to effectively execute the search warrant is a factual question which cannot be determined at this point

11 of the litigation. At this stage of the pleadings, the Court must accept as true the allegations of the

12 complaint and construe the pleading in the light most favorable to plaintiffs. *Lazy Y. Ranch LTD v.*

13 *Behrens,* 546 F.3d at 588.

14      **b.      Use of Force**

15      Defendant Essegian argues that the allegation Essegian "brandished his unholstered firearm at

16 plaintiff" is insufficient to allege an excessive force claim because this is a search and seizure case.

17 (Doc. 21, Moving papers p. 6.)  Defendant argues that Essegian did not act unreasonably because it is

18 expected he would be carrying a firearm and is alleged "only" to brandish the weapon at plaintiff

19 Vartanian.  (Doc. 21, moving papers p. 6.)

20      Persons present at a search may not be detained under unreasonable circumstances. *Mena v. City*

21 *of Simi Valley*, 226 F.3d 1031 (9th Cir. 2000) (officers unreasonably detained resident in handcuffs).

22 Inherent in the authorization to detain an occupant of the place to be search is the authority to use

23 reasonable force to effectuate the detention. *Muehler v. Mena*, 544 U.S. 93, 98, 125 S.Ct 1465 (2005).

24 The manner of detention is evaluated on the basis of what is reasonable in light of the particular

25 circumstance in the case.  *Muehler v. Mena*, 544 U.S. at 99-100 (use of handcuffs reasonable in

26 detaining occupant where warrant authorized a search for weapons and a wanted gang member.)

27 *Hansen v. Schubert*, 459 F. Supp. 2d 973, 989-91 (E.D. Cal. 2006) (court found lawful: (1) executing

28 officers displaying their weapons and touching occupants in order to move them to the living room; (2)

7

occupants were all forced to remain at the living room table for several hours and were not told that they were free to leave; (3) occupant told that she had to remain in the living room; (4) occupant was escorted to the bathroom; and (5) occupant was not allowed to answer the telephone during the entire period of the search).

Here, plaintiff Vartanian alleges that force was used in execution of the warrant which was unreasonable under the circumstances.  She alleges that she was instructed to open the cash register by other searching officers but that Essegian "brandished" his weapon in an implied intimidation to stop her actions.  Defendant argues that his conduct was "reasonable" under the circumstances.  The Court however, cannot determine on this motion whether defendant Essegian's conduct was reasonable.  Reasonableness is a question of fact which cannot be determined at this pleading stage.  The allegations are sufficient to state a claim under the Fourth Amendment.

### c.   Exploratory search

Defendant argues that first cause of action should be dismissed because plaintiff has not plead an exploratory search.  (Doc. 30, Reply p. 2-3.)  Defendant notes the description of the search as stated in the warrant adequately permits the search conducted.

The Fourth Amendment prevents "general, exploratory searches and indiscriminate rummaging through a person's belongings." *United States v. Mann*, 389 F.3d 869, 877 (9th Cir. 2004), *cert. denied*, 544 U.S. 955 (2005).  A valid warrant must describe particularly the places that officers may search and the types of items that they may seize. *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir.1986).  However, the search warrant need only be reasonably specific, rather than elaborately detailed. *Mann*, 389 F.3d at 877 (quoting *United States v. Rude*, 88 F.3d 1538, 1551 (9th Cir.1996)).

Plaintiff alleges an "exploratory search" because documents "outside" of the scope of the search warrant were seized:

> 28. Silva, Wilson and Essegian also took the personal records of Sona Vartanian as well as her personal laptop computer and did not record the taking of those records or the laptop computer on the property receipt. These records include materials used in her teaching at a local college, i.e. lesson plans, grading sheets, student records and her laptop computer.
>
> 29. Essegian and Wilson searched the personal vehicle of Sona Vartanian and Ms. Vartanian's brother. It is unknown what items where taken from these vehicles except the registration. . . .

1
2
3
4

> 39. The search warrant specifically limits the seizure to items which may show criminal activity pertaining to the purchase and/or sales of vehicles. Pacific Marine Center, Inc. was in the business of selling and servicing vessels [boats] not vehicles. None of the records seized by Silva, Wilson and/or Essegian and other defendants pertained to vehicles; they only pertained to vessels [boats]. Every place searched and every single item seized was the subject of an illegal search and seizure.  (Doc. 20 FAC.)

5   If a search warrant sufficiently describes the premises to be searched, the warrant will justify a search

6   of those personal effects found, if the effects might contain the described items.  *United States v.*

7   *Williams*, 687 F.2d 290 (9th Cir. 1982) ( proper to search a lunch box for evidence of marijuana

8   cultivation).  Here, the warrant is not before the Court and the facts pertaining to the search are not

9   before the Court.  Accordingly, whether the search went beyond the scope of the warrant cannot be

10  determined at this point in the litigation.

11              **d.      Giving Plaintiffs a Copy of the Affidavit**

12              Defendant Essegian moves to strike paragraph 25 of the FAC on the grounds that plaintiff was

13  not entitled to see the search warrant affidavit. Paragraph 25 states in relevant part: "Silva told Plaintiff

14  Vartanian that he did not have to explain anything to her; he gave Sona Vartanian a copy of the search

15  warrant but refused to give her a copy of the affidavit in support of the search warrant."

16              The United States Supreme Court has not interpreted the Fourth Amendment to the United States

17  Constitution as requiring the officer executing the search warrant to display the warrant or provide

18  defendant a copy of it.  *People v. Calabrese*, 101 Cal.App.4th 79, 84, 123 Cal.Rptr. 570, 573 (2002)

19  (citing *West Covina v. Perkins*, 525 U.S. 234, 240, 246, n. 1, 119 S.Ct. 678, 142 L.Ed.2d 636 (1999)

20  (conc. opn. of Thomas, J.)).  Furthermore, in California, "there is no statutory or constitutional

21  requirement that a search warrant be exhibited as a prerequisite to execute it." *People v.*

22  *Rodrigues-Fernandez*, 235 Cal.App.3d 543, 553, 286 Cal.Rptr. 700 (1991). The Ninth Circuit has

23  acknowledged that when a search warrant is issued by a California court and executed by California

24  police officers, "there is no statutory or constitutional requirement that a search warrant be exhibited as

25  a prerequisite to execute it." *U.S. v. Silva*, 247 F.3d 1051, 1058, fn. 4 (9th Cir.2001), distinguishing

26  *United States v. McGrew*, 122 F.3d 847 (9th Cir.1997).  California courts have also explained that

27  "officers executing the search warrant were not required to display the warrant or give [the occupant]

28  a copy of it" and "there is no California statutory requirement to exhibit the warrant or give the defendant

a copy of it as a prerequisite to its execution." *Calabrese*, 101 Cal.App.4th 79, 84-85, 123 Cal.Rptr.2d 570, 573-574.

Defendant is correct that he was not required to present the affidavit, to plaintiffs prior to executing it. Therefore, plaintiffs lack a claim regarding the failure to provide the search warrant affidavit. The allegation will be stricken.

**D.    The Second Cause of Action for Defamation in Violation of the Fourteenth Amendment**

The second cause of action alleges a constitutional claim for defamation against defendants Silva and Wilson. Plaintiffs allege:

> 23. Tom Wilson stated publicly that "They [Pacific Marine Center] have sold warranties to customers but never provided those warranties." "They [Pacific Marine Center] have committed theft against their customers."

> 32. Wilson and/or Silva informed the press that Sona Vartanian was selling extended warranties and pocketing the money without submitting the policies to the warranty company. "Vartanian instead pocketed more than $500,000.00 which clients had paid for products they had purchased." (Doc. 20, FAC ¶23, 32.)

Plaintiffs allege that they have been harmed from these statements as follows:

> 50. These statements, not only damaged the reputation of Sona Vartanian and Pacific Marine Center, but also stigmatized both Plaintiffs as persons who conducted their business and their lives in a fraudulent and dishonest manner. Pacific Marine Center is virtually out of business because customers are not patronizing the business to buy the products which Pacific Marine Center has for sale. Pacific Marine Center has a property interest in its business and that property interest has not been merely altered but virtually extinguished.

> 51. Sona Vartanian is a tenured college professor in a local college and thus is held to a higher standard of conduct in the community than others. By publically alleging that Sona Vartanian conducted a fraudulent and dishonest business, Silva and/or Wilson have cast a stigma on Sona Vartanian in the academic community where she works and one of the effects of that stigma is lower class registration in her classes. (Doc. 20, FAC ¶50-51.)

Defamation is not a constitutional claim. An injury to reputation alone is not sufficient to establish a deprivation of a liberty interest protected by the Constitution. *Paul v. Davis*, 424 U.S. 693, 701, 711, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). In *Paul v. Davis*, the Supreme Court clarified that procedural due process protections apply to reputational harm only when a plaintiff suffers stigma from governmental action plus alteration or extinguishment of "a right or status previously recognized by state

10

law." *Paul v. Davis,* 424 U.S. 693, 711, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).  "[P]etitioners' defamatory publications, however seriously they may have harmed respondent's reputation, did not deprive him of any 'liberty' or 'property' interests protected by the Due Process Clause."  *Id.*; *see also WMX Tech., Inc. v. Miller*, 197 F.3d 367, 374 (9th Cir. 1999) ("[R]eputation, without more, is not a protected constitutional interest.")

The Supreme Court in *Paul v. Davis* did not preclude all reputational damage.  To support a claim under § 1983, the plaintiffs must show that the stigma was accompanied by some additional deprivation of liberty or property.  This is referred to as the "stigma-plus" test.  The "stigma-plus" test requires that in addition to reputational harm, a due process stigma claim must assert that a recognized liberty or property right, as secured by the due process clauses, has been violated.  *Paul v. Davis*, 424 U.S. at 712, 96 S.Ct. 1155.  To establish a deprivation of a liberty interest, a plaintiff must prove both "the public disclosure of a stigmatizing statement by the government, the accuracy of which is contested, plus the denial of 'some more tangible interest [ ] such as employment,' or the alteration of a right or status recognized by state law."  *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 982 (9th Cir. 2002), quoting *Paul v. Davis*, 424 U.S. 693, 701 (1976).

The Ninth Circuit has limited the "stigma-plus" to situations where both the defamatory statement and the tangible burden on a legal right are statutorily created.  *Humphries v. County of Los Angeles*, 554 F.3d 1170 (9th Cir. 2009).  In *Humphries*, parents were arrested on charges of child abuse and felony torture, but were subsequently found "factually innocent" after charges were dismissed.  Parents then brought §1983 action for deprivation of a liberty interest against the state and county defendants.  Parents had been listed on the California Child Abuse Index ("CACI"), and they sought to have their names removed.  Parents claimed that they suffered reputational harm by being listed in CACI.

The *Humphries* Court relied upon *Paul v. Davis* in that reputational harm is protected only when a plaintiff suffers stigma from governmental action plus alteration or extinguishment of "a right or status previously recognized by state law."  In applying the stigma-plus test, the *Humphries* Court easily found the parents had been shown "stigma:"  "[B]eing labeled a child abuser by being placed on the CACI is 'unquestionably stigmatizing.'"  *Humphries*, 554 F.3d at 1186.

11

1     The Court noted, however, that the more difficult question is whether the "plus" test had been

2  satisfied: whether "a right or status previously recognized by state law was distinctly altered or

3  extinguished." *Id.* citing *Paul*, 424 U.S. at 711, 96 S.Ct. 1155.  The Court found that the "plus" test had

4  been met.  California required state agencies, private businesses, and licensing agencies to check whether

5  potential employees or applicants were in CACI.  Being included in the CACI altered the parents' legal

6  rights or status in a variety of ways that Californians who are not listed on the CACI are not subject to.

7  The state statutes mandated that licensing agencies search the CACI list and investigate any adverse

8  information, prior to granting some rights and benefits, such as a teaching credential or child care

9  license.  *Id.* at 1188. The Court held "where a state statute creates both a stigma and a tangible burden

10  on an individual's ability to obtain a right or status recognized by state law, an individual's liberty interest

11  has been violated." *Humphries*, 554 F.3d at 1188.  Thus, the statutory scheme of being included in the

12  CACI both stigmatized parents and created an impediment to the ability to obtain legal rights.

13     The Court, thus, restricted "stigma plus" claims to situations where both the defamatory

14  statement and the tangible burden on a legal right are statutorily created.  *Id.* at 1189. This limitation

15  narrowed the Court's concern "that every insult by a police officer might create a due process right and

16  turn the Fourteenth Amendment into 'a font of tort law to be superimposed upon whatever systems may

17  already be administered by the States.'" *Id.* at 1189, citing *Paul,* 424 U.S. at 701, 96 S.Ct. 1155.  The

18  Ninth Circuit "emphasize[d] that an injury that results merely from simple defamation is not a

19  constitutional liberty interest under the 'stigma-plus' test." *Id.* at 1189.  The Court noted that

20  employment, licensing, custody, or other legal rights under California law are not refused merely because

21  of the deleterious effect of a bad reputation.

22     Here, plaintiffs allegations do not rise to the level of liberty interest found in *Humphries*.  The

23  alleged statements of Wilson and Silva have not stigmatized plaintiffs and created a statutory

24  impediment to the ability to obtain legal rights.  Plaintiffs have alleged that the statements "stigmatized

25  both Plaintiffs as persons who conducted their business and their lives in a fraudulent and dishonest

26  manner."  They have alleged that the reputational harm as the result of defamatory statements which

27  have resulted in a loss of business and lower class enrollment.  The "stigmatizing statements" by Wilson

28  and Silva do not create a "statutory impediment" to Vartanian being hired or continuing teaching.  The

1   stigmatizing statements by Wilson and Silva do not create a "statutory impediment" to Pacific Marine's

2   business operations.  The allegations do not show that Wilson's and Silva's stigmatizing conduct placed

3   a "tangible burden" on Vartanian's employment or teaching opportunities.  Rather, the allegations show

4   an "intangible deleterious effect that flows from a bad reputation."  *Humphries,* 55 F.3d at 1190, *citing*

5   *Valmonte v. Bane,* 18 F.3d 992 (2d Cir.1994).  Accordingly, the second cause of action fails to state a

6   claim upon which relief may be granted.

7   **E.**      **Leave to Amend**

8          The Court previously granted plaintiffs leave to file a First Amended Complaint.  The First

9   Amended Complaint failed to add any factual allegations which could be facially plausible to a claim

10   for defamation in violation of the Fourteenth Amendment. The complaint's "non-conclusory factual

11   content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling

12   the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation

13   marks omitted), citing *Iqbal*, 129 S.Ct. at 1949, ("A claim has facial plausibility," the Court explained,

14   "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

15   defendant is liable for the misconduct alleged.")

16          Plaintiff has not requested leave to amend the Second Cause of Action or shown how an

17   amendment may state a claim for relief.  Accordingly, leave to amend will not be granted for the second

18   cause of action.

19                                                 **CONCLUSION**

20          For the foregoing reasons, the Court orders as follows:

21          1.        The motion to dismiss the first cause of action is DENIED.

22          2.        The motion to dismiss the second cause of action GRANTED without leave to amend.

23          3.        The motion to strike the allegations in paragraph 25 regarding the affidavit is

24                    GRANTED.

25   IT IS SO ORDERED.

26   **Dated:    November 30, 2009             /s/ Lawrence J. O'Neill**
                                            UNITED STATES DISTRICT JUDGE

27

28

                                                      13