1

2

3

4

5

6                          **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE EASTERN DISTRICT OF CALIFORNIA**

8

9    PACIFIC MARINE CENTER, INC.              CASE NO. CV F 09-1409 LJO JLT
     et al.,
10                        Plaintiffs,          **ORDER ON DEFENDANTS' MOTIONS FOR
                                               SUMMARY JUDGMENT** (Doc. 142, 143, 144)
11          vs.

12   SCOTT SILVA, TOM WILSON,
     E. ESSEGIAN,
13
                          Defendants.
14   _____/

15          Three motions for summary judgment, or in the alternative, partial summary judgment against

16   Plaintiffs Pacific Marine Center and Sona Vartanian pursuant to Rule 56 are pending before this Court:

17   (1) Motion by Defendant George Imirian, (2) Motion by Defendants Scott Silva, Tom Wilson, Dan

18   Ayala, Dan Horsford, Kevin Buchanan, Gideon Coyle, and Chris Wagner, and (3) Motion by Defendant

19   Edward Essegian.  Plaintiffs Pacific Marine Center, Inc. ("Pacific Marine") and Sona Vartanian ("Sona")

20   filed an opposition to each motion on July 25, 2011.  (Doc. 145-166.)  Each defendant filed a reply on

21   August 1, 2011.  Pursuant to Local Rule 230(g), this matter was submitted on the pleadings without oral

22   argument, and the hearing set was VACATED.  Having considered the moving, opposition, and reply

23   papers, as well as the Court's file, the Court issues the following order.[1]

24   _____

25          [1] The parties have filed numerous objections to the evidence submitted by the opposing side. The Court has not
     relied on any of the disputed evidence to grant or to deny summary judgment. Where the Court has denied summary judgment
26   as to the claims, the Court found triable issues exist regarding the issues.  To the extent that the Court may have considered
     some of the disputed evidence in either granting the summary judgment or in finding that triable issues exist regarding the
27   claims, the objections are OVERRULED.  Further, the Court is not obligated to consider matters not specifically brought to
     its attention. Thus, it is immaterial that helpful evidence may be located somewhere in the record. The motion and opposition
28   must designate and reference specific triable facts. *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th

                                                        1

**FACTUAL BACKGROUND**

Plaintiffs Pacific Marine Center and Sona Vartanian (collectively "plaintiffs") bring this action based upon a search warrant that was executed at the business premises of Pacific Marine on August 10, 2009.  Plaintiffs allege claims against the investigators and officers who conducted the search. Defendant Scott Silva is an investigator for the Department of Motor Vehicles ("DMV") and was responsible for obtaining the warrant.  Defendant Tom Wilson is the supervisor for the investigative Department of DMV and Silva's supervisor.   Other DMV employees are named as defendants: Dan Ayala, Kevin Buchanan, Dan Horsford, Gideon Coyle, Christopher Wagner. (Doc. 94 Second Amended Complaint ("SAC") ¶¶8-12.)  Defendant Edward Essegian is a deputy sheriff for the County of Fresno. Defendant George Imirian is a sworn police officer for the City of Fresno Police Department.  (Doc. 94, SAC ¶14; Doc. 142-1, Motion p.1.)  Each of these defendants, including supervisor Tom Wilson, participated in the execution of the search warrant at Pacific Marine.

Plaintiffs claim one cause of action for Violation of Fourth Amendment for unreasonable search and seizure and use of excessive force.

**A.      The Warrant**

The search was incident to a criminal investigation by the DMV.  The DMV suspected Pacific Marine and Sona of extended warranty fraud which involved selling extended boat warranties to its customers and failing to purchase the warranty policies.  On or about August 5, 2009, Defendant Silva sought and obtained a warrant to search the premises located at "10452 Highway 41 in Madera." (Doc. 94, SAC ¶16.)  The warrant was signed by a Superior Court Judge, based upon a Statement of Probable Cause submitted by Silva.  The Statement of Probable Cause was based upon statements by two ex-employees (Martinez and Abrahamian) who were involved in warranty repairs or related work.  (Doc. 143-2, Statement of Probable Cause p. 14 of 83.) The Statement of Probable Cause was also based upon information from two customers of Pacific Marine who stated that they had purchased warranties but were not provided with the warranties.

The search warrant identified five categories of documents to be seized.  Generally, the

---

Cir. 2001).

1  documents to be seized included, "any and all Dealer Jackets . . . and any other documents which may

2  show criminal activity pertaining to the purchase and/or sales of vehicles."  The warrant required the

3  seizure of "[a]ll completed warranty contracts for, but no[t] limited to Passport warrant company."

4  Other documents, such as "books, records, receipts, bank statement . . .," "answering machines," and

5  "identity documents for indicia of residency" were also covered by the search warrant.  (Doc. 94, SAC

6  ¶19-21.)  The warrant also authorized the investigating officers, at their discretion, to seize all "computer

7  systems," "computer programs or software," and "supporting documentation." (Doc. 94, SAC ¶20.) The

8  search warrant permitted the search of any and all yards, garages, carports, outbuildings, storage areas,

9  trash containers, sheds, and mailboxes assigned to 10452 Highway 41 in Madera.  (Doc. 94, SAC ¶27.)

10       Plaintiffs allege that the warrant was based upon false information given by Defendant Silva, and

11  approved by defendant Wagner.   Plaintiffs further allege that the false information was that stolen or

12  embezzled property was located at Pacific Marine's business, that property at Pacific Marine was used

13  to commit felonies.

14  **B.     The Search**

15       On or about August 10, 2009, Silva, Wilson, Essegian, Imirian, Wagner, Horsford, Ayala,

16  Buchanan, and Coyle entered the premises at 10452 Highway 41, County of Madera, State of California

17  which housed the offices of Pacific Marine Center, Inc.  (Doc. 94, SAC¶ 33.)  Plaintiffs allege that the

18  defendants began "ransacking the entire business office and throwing files and records in disarray."

19  (Doc. 94, SAC ¶36.) Plaintiffs allege that Essegian brandished his unholstered weapon at Sona and

20  would not permit her to open the cash register.  (Doc. 94, SAC ¶35.)  Plaintiffs allege that defendants

21  took the personal records of Sona Vartanian and her personal computer and did not record the property

22  on the property receipt.  (Doc. 94, SAC ¶.)  Plaintiffs allege that Sona Vartanian's property was not

23  within the scope of the warrant.  Plaintiffs allege that defendants took other records not related to Pacific

24  Marine and did not record that property on the property receipt. (Doc. 94, SAC ¶¶36-38.)  Plaintiffs

25  allege that these other records were not within the scope of the warrant.  Plaintiffs allege that Essegian

26  and Wilson searched the personal vehicle of Jack Vartanian, Sona's brother.  (Doc. 94, SAC ¶39.)

27  Plaintiffs also allege that Silva, Wilson, Imirian and Essegian destroyed the business' security

28  monitoring system.  (Doc. 94, SAC ¶40.)  Plaintiffs allege that Essegian, Silva, Wilson and Imirian

1  disconnected computer system, seized the hard drive of that computer system and then viciously

2  destroyed the remaining portion of computer making it inoperative.  (Doc. 94, SAC ¶41.)

3  <u>**ANALYSIS AND DISCUSSION**</u>

4  **A.**     **Summary Judgment/Partial Summary Judgment Standards**

5          F.R.Civ.P. 56(b) permits a "party against whom relief is sought" to seek "summary judgment on

6  all or part of the claim."  Summary judgment/adjudication is appropriate when there exists no genuine

7  issue as to any material fact and the moving party is entitled to judgment/adjudication as a matter of law.

8  F.R.Civ.P. 56( c); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348,

9  1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

10  The purpose of summary judgment/adjudication is to "pierce the pleadings and assess the proof in order

11  to see whether there is a genuine need for trial."  *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct.

12  1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985). On

13  summary judgment/adjudication, a court must decide whether there is a "genuine issue as to any material

14  fact," not weigh the evidence or determine the truth of contested matters.  F.R.Civ.P. 56 ( c); *Covey v.*

15  *Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398

16  U.S. 144, 157, 90 S.Ct. 1598 (1970).

17          To carry its burden of production on summary judgment/adjudication, a moving party "must

18  either produce evidence negating an essential element of the nonmoving party's claim or defense or

19  show that the nonmoving party does not have enough evidence of an essential element to carry its

20  ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210

21  F.3d 1099, 1102 (9th Cir. 2000).  "[T]o carry its ultimate burden of persuasion on the motion, the moving

22  party must persuade the court that there is no genuine issue of material fact."  *Nissan Fire*, 210 F.3d at

23  1102.  "As to materiality, the substantive law will identify which facts are material.  Only disputes over

24  facts that might affect the outcome of the suit under the governing law will properly preclude the entry

25  of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).

26          "If a moving party fails to carry its initial burden of production, the nonmoving party has no

27  obligation to produce anything, even if the nonmoving party would have the ultimate burden of

28  persuasion at trial."  *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes*, 398 U.S. at 160, 90 S.Ct. 1598.

4

1    "If, however, a moving party carries its burden of production, the nonmoving party must produce

2    evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103. "If the nonmoving party fails

3    to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion

4    for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322,

5    106 S.Ct. 2548 (1986) ("Rule 56( c) mandates the entry of summary judgment, after adequate time for

6    discovery and upon motion, against a party who fails to make the showing sufficient to establish the

7    existence of an element essential to that party's case, and on which that party will bear the burden of

8    proof at trial.")

9    **B.      Administrative Authority of DMV to Conduct Searches**

10        Plaintiffs argue that DMV did not need to have a search warrant to enter and inspect the books

11   at Pacific Marine.  Plaintiffs argue that DMV has authority to enter the premises of any licensee for the

12   purpose of inspecting the books and records of the licensee. Vehicle Code 11714 (c).  Plaintiffs also

13   argue that DMV exceeded its statutory authority to inspect records by acting as law enforcement officers.

14   (Doc. 146, Opposition p.12-13.)  Plaintiffs argue that the search of Pacific Marine was not within the

15   parameters of enforcing the law under the administration of DMV.

16        DMV is responsible for the issuing of licenses to dealers of vehicles. Cal.Veh. Code §11700.

17   DMV has the power to suspend or revoke a license. Cal.Veh. Code §11705. DMV officers are "peace

18   officers" for purposes of enforcing the law as set forth in the Vehicle Code. Cal.Pen. Code §830.3(c).

19   DMV is authorized to proceed criminally for violation of regulations. *People v. Oatas*, 207 Cal.App.3d

20   Supp. 18, 22 (1989). In *Terry York Imports, Inc. v. Department of Motor Vehicles*, 197 Cal.App.3d 307,

21   242 Cal.Rptr. 790 (1987), the court determined that DMV officers have peace officer status with

22   inspection rights.  The court invalidated an unlimited warrantless search of the business records of a

23   dealership, finding DMV had no statutory authority to conduct a broad warrantless search.  *Terry* did

24   not invalidate DMV's investigative authority, and only held that DMV is not allowed to conduct a

25   warrantless search of records for criminal activity. *Id.* at 309.

26        Here, the Court dismisses plaintiffs' argument that DMV was not required to obtain search

27   warrant to inspect Pacific Marine's books.  In this case, DMV obtained a search warrant and with search

28   warrant in hand, searched Pacific Marine.  The Court evaluates the search warrant under Constitutional

principles.  The Fourth Amendment's restrictions on unreasonable searches are not limited to criminal investigations and also apply to administrative inspections.  *Donovan v. Lone Steer*, Inc., 464 U.S. 408, 104 S.Ct. 769 (1984).  Further, pursuant to the statutory authority and case law, DMV maintains authority to act as peace officers to conduct searches for criminal activity.  Thus, DMV did not exceed its administrative authority by obtaining a search warrant to conduct an administrative search.

**C.      Search Warrant Standards - Probable Cause**

Plaintiffs argue that the warrant lacked probable cause.  Plaintiffs argue Silva did no investigation to verify the information by the informants or whether the informants held grudges. The two former Pacific Marine employees who acted as informants, Martinez and Abrahamian, were disgruntled former employees who themselves had defrauded Pacific Marine.

**1.       Probable Cause Standards**

California Penal Code §1524(a)(4) authorizes a search warrant's issuance when "the property or things to be seized consist of any item or constitute any evidence that tends to show a felony has been committed, or tends to show that a particular person has committed a felony."  In making a probable cause determination, a court's role is to ensure that the judge issuing the search warrant had a "substantial basis" to conclude probable cause existed.  *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 2332 (1983); *United States v. Hendricks*, 743 F.2d 653, 654 (9th Cir. 1984), *cert. denied*, 470 U.S. 1006, 105 S.Ct. 1362 (1985).  "The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Gates*, 462 U.S. at 238, 103 S.Ct. 2317.

"[I]t is clear that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.'" *Gates*, 462 U.S. at 235, 103 S.Ct. 2317 (quoting *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584 (1969)).  "The facts . . . must be sufficient to justify a conclusion . . . that the property which is the object of the search is probably on the person or premises to be searched at the time the warrant is issued."  *Durham v. United States*, 403 F.2d 190, 193 (9th Cir. 1968).  In determining whether a search warrant is supported by probable cause, the crucial element is not whether

1  the target of the search is suspected of a crime, but whether it is reasonable to believe that the items to

2  be seized will be found in the place to be searched.  *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 & n.

3  6, 98 S.Ct. 1970, 1976-1977 & n. 6 (1978).

4          **2.     Standards for "Judicial Deception" in Obtaining a Search Warrant**

5          Plaintiffs argue that Silva engaged in judicial deception in obtaining the warrant.  Plaintiffs argue

6  that Silva omitted important information from the warrant which amounts to judicial deception in

7  obtaining the warrant.

8           Judicial deception may not be employed to obtain a search warrant. *Franks v. Delaware*, 438

9  U.S. 154, 155-56, 98 S.Ct. 2674 (1978). To support a § 1983 claim of judicial deception, a plaintiff must

10  show that the defendant deliberately or recklessly made false statements or omissions that were material

11  to the finding of probable cause. *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir.

12  2002).  A plaintiff's showing of a deliberate falsehood or reckless disregard for the truth must be

13  substantial. *Ewing v. City of Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009).  "Omissions or

14  misstatements resulting from negligence or good faith mistakes will not invalidate an affidavit which

15  on its face establishes probable cause." *Ewing*, 588 F.3d at 1224.  The court determines the materiality

16  of alleged false statements or omissions.  *Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002).   The

17  materiality element—a question for the court—requires the plaintiff to demonstrate that "the magistrate

18  would not have issued the warrant with false information redacted, or omitted information restored."

19  *Lombardi v. City of El Cajon*, 117 F.3d 1117, 1126 (9th Cir.1997).  If a party makes a substantial

20  showing of deception, the court must determine the materiality of the allegedly false statements or

21  omissions. *KRL v. Moore*, 384 F.3d 1105, 1117 (9th Cir. 2004); *see also Butler*, 281 F.3d at 1024

22  ("Materiality is for the court, state of mind is for the jury.").

23          In *KRL v. Moore*, the plaintiffs in a 1983 action, like plaintiffs here, claimed a search warrant

24  lacked probable cause.  The plaintiffs challenged the reliability of the informant alleging that the

25  officer's affidavit omitted: (1) the informant's criminal history, and grudge against plaintiffs, (2) lacked

26  corroboration of informant's testimony, a prior complaint filed by the informant was investigated and

27  found to be unsubstantiated.  *KLR*, 384 F.3d at 1117-1118.  The court held even taking the facts in light

28  most favorable to plaintiffs, "the omission did not affect the finding of probable cause to support the

search warrant." *Id.* at 1118. The probable cause affidavit indicated that the investigators corroborated the main witness statements with another witness. The court found that the affiant officer was entitled to qualified immunity for his statements in the search warrant.

If an officer submitted false statements, the court purges those statements and determines whether what is left justifies issuance of the warrant. *See*, *e.g.*, *Baldwin v. Placer County*, 418 F.3d 966, 971 (9th Cir. 2005), *cert. denied*, 546 U.S. 1170 (2006). If the officer omitted facts required to prevent technically true statements in the affidavit from being misleading, the court determines whether the affidavit, once corrected and supplemented, establishes probable cause. *See*, *e.g.*, *Liston v. County of Riverside*, 120 F.3d 965, 973-74 (9th Cir. 1997). In *Ewing v. City of Stockton*, 588 F.3d 1218 (9th Cir. 2009), the Ninth Circuit concluded that a warrant application's two false statements about the plaintiff were not material because an independent, reliable source's detailed description of the incident and identification of the plaintiff at the scene were sufficient to establish probable cause. *Id.* at 1224–25. In *Lombardi v. City of El Cajon,* 117 F.3d 1117, 1126, a drug search warrant application failed to mention that the two confidential informants—whose statements were the only evidence that the plaintiff had drugs in his home—had axes to grind with the plaintiff. The court held that the omitted information was immaterial because the informants' statements were given independently, were detailed, were based on personal observation, were corroborated by one another, and were against one informant's penal interests. *Lombardi*, 117 F.3d at 1126–27.

**3.      Plaintiff cannot make a Substantial Showing of Falsehood or Reckless Disregard**

Plaintiffs allege that Silva did not give sufficient information to the judge to establish probable cause for four reasons: 1) he failed to corroborate his confidential informants' information and did not inform the magistrate that the confidential informants' information was uncorroborated; 2) he failed to inform the magistrate that he had given one of the informants [Martinez] immunity from prosecution for a crime against Pacific Marine in exchange for his testimony against Pacific Marine,[2] 3) Silva's

---

[2] The parties dispute whether Martinez was granted immunity from prosecution. Plaintiffs argue Martinez was granted immunity, and Silva failed to disclose the immunity to the Magistrate Judge. (Doc. 146, Opposition p.2.) Silva disputes that he granted immunity to Martinez. (Doc. 167, Reply p. 5-6; Silva Decl ¶3 (stating he had no authority to grant immunity).) The evidence cited by plaintiffs to support the "fact" that Martinez was granted immunity is testimony by Martinez which states, in total: "Q: You worked out some sort of agreement to testify against someone in exchange so you

theory of the crime alleged in the Statement of Probable Cause does not exist under the facts of this case [theft by embezzlement], and 4) Silva withheld highly relevant information from the magistrate which if known by the magistrate, would have more likely than not caused the magistrate to reject the request for the search warrant.[3]  (Doc. 146, Opposition p.2, 5.)

Here, even if Silva omitted the information claimed by plaintiffs that should have been in the probable cause, the warrant application would have contained facts sufficient to establish probable cause. Like the omitted statements in *Lombardi*, the omitted statements here were not material.  Both employees' statements were given independently.  Both Martinez and Abrahamian were long term employees of Pacific Marine.  Both of the former employees were responsible in some fashion for warranty information or dealt with warranty repairs.  Each former employee was interviewed separately and corroborated one another's testimony.  Each had personal knowledge of warranty work.  Each employee reported conduct based upon personal observations.  While plaintiffs argue both Martinez and Abrahamian were terminated for cause which should have been disclosed to the Magistrate Judge, plaintiffs do not argue these witnesses colluded with one another.  Further, like the statements in *Lombardi*, the statements by Martinez and by Abrahamian were against their own penal interests for engaging in fraudulent conduct involving warranty repairs.

In addition, two customers further corroborated the potential warranty fraud claims.  Both customers, Lopez and Licon, told Silva they had purchased an extended warranty, but when each checked with the warranty company, neither policy existed.  Each customer was interviewed separately by Silva, and each customer stated the same situation. (Doc. 143-2, Probable Cause p.5.) Pacific Marine

---

don't be prosecuted?"  Mr. Martinez answered: "Yeah  - - yes."  (Doc. 155-5, Exh. 6.)  This evidence does not raise an issue of fact as to whether Silva was granted immunity because there is no reference whatsoever to Silva, or this litigation or some other litigation not involving Silva.  Indeed, the inference from the evidence is the Martinez possibly worked out an agreement with the County of Madera regarding the charges filed by Pacific Marine against Martinez for theft.  Plaintiffs have not shown that Martinez was granted immunity by Silva such that this fact should have been included in the Probable Cause affidavit.

[3] Plaintiffs facts in this last category are somewhat duplicative of the other categories.  Plaintiffs contend that Silva failed to disclose the Magistrate Judge: (1) that the informants had been terminated for cause, (2) that Martinez had been terminated for the reason he accused Pacific Marine (Martinez was using used parts in repairs instead of new parts); (3) that Martinez had been given immunity if he testified against Pacific Marine; (4) that the 2 customers who were stated in the Probable Cause affidavit, Lopez and Licon, did not purchase extended warranties from Pacific Marine, but from a prior company PSL.  (Doc. 146, Opposition p. 5-6.)

1   argues that Silva failed to investigate fully because the Licon contract took place before Pacific Marine

2   came into existence, and that the contract did not include an extended warranty. (Doc. 146, Opposition

3   p.15.) The Statement of Probable Cause indicates Silva relied upon the Licon transaction with a written

4   invoice provided for services performed by Pacific Marine on May 18, 2009 and based upon interview

5   statements provided by Licon. (Doc. 143-2, Probable Cause p.5.) Thus, Silva had written documentation

6   that Pacific Marine was involved in the Licon transaction. More investigation is not omission of fact.

7   An investigator is not required to prove beyond a reasonable doubt that criminal activity occurred; rather

8   the issue is whether it is reasonable to believe that items to be seized are at the location specified in the

9   search warrant. *Zurcher*, 436 U.S. at 556 n.6. Plaintiffs have not raised any material issue that Silva

10  should have doubted the credibility or veracity of either Lopez or Licon. The information provided by

11  Martinez and Abrahamian was corroborated by independent witnesses.

12      Further, Silva is an experienced investigator who relied upon his expertise in assessing the

13  information provided to him. He has twenty-four years as a peace officer and eleven years as a DMV

14  investigator, investigating the types of crimes alleged in this case. (See Doc.143-2, Statement of

15  Probable Cause p.3.) The Court employs a "totality of the circumstances test" to determine whether a

16  search warrant is supported by probable cause. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76

17  L.Ed.2d 527 (1983). This test requires "a practical, common-sense decision whether, given all the

18  circumstances set forth in the affidavit, including the 'veracity' and 'basis of knowledge' of persons

19  supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be

20  found in a particular place." *United States v. Feeney*, 984 F.2d 1053, 1055 (9th Cir.1993).

21      The Statement of Probable Cause presented ample and accurate evidence of possible warranty

22  fraud occurring at the business operating boating sales at the Pacific Marine location. No detail in the

23  probable cause statement was itself conclusive. Rather, the details which formed the totality of the

24  circumstances constituted probable cause. Considering the totality of the evidence before Silva at the

25  time of the probable cause statement, plaintiffs have failed to make a "substantial showing" that Silva

26  made a deliberate falsehood or acted in reckless disregard for the truth in his search warrant application.

27      **3.       Plaintiffs' Evidence of a Discrepancy of Ownership**

28      Sona Vartanian presents evidence that Silva confused the operations of "PSL" with Pacific

10

Marine.  Sona Vartanian purchased the assets of Pacific Sales and Leasing ("PSL") from Hagop Vatanian on July 1, 2008.  (Doc. 146-2, Sona Decl. ¶3.)  Before July 1, 2008, PSL operated the business and is an entirely different entity from Pacific Marine.  Sona presents evidence that Pacific Marine does not sell extended warranties at all. (Doc. 146-2, Sona Decl. ¶12.)  Plaintiffs argue that the statements of Martinez and Abrahamian related to what they saw two year earlier when the business was operated by a different owner (PSL not Pacific Marine).  (Doc. 146, Opposition p.16-17.)

The issue for this Court is not whether Pacific Marine had engaged in a crime.  The issue for the Court is whether the evidence would be located at the Pacific Marine location.  *Zurcher*, 436 U.S. at 556 n.6.[4]  Here, the Court has found that the Statement of Probable Cause stated sufficient grounds to believe that evidence of criminal activity may be found at the Pacific Marine location.

**D.      Search Exceeding Scope of Warrant**

Plaintiffs argue the search of Pacific Marine exceeded the scope of the warrant.  Plaintiffs argue certain documents were seized which were not within the scope of the warrant and areas of the physical building were not within the scope of the warrant.

The Fourth Amendment prevents "general, exploratory searches and indiscriminate rummaging through a person's belongings." *United States v. Mann*, 389 F.3d 869, 877 (9th Cir. 2004), *cert. denied*, 544 U.S. 955 (2005).  A valid warrant must describe particularly the places that officers may search and the types of items that they may seize. *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir.1986).  However, the search warrant need only be reasonably specific, rather than elaborately detailed. *Mann*, 389 F.3d at 877 (quoting *United States v. Rude*, 88 F.3d 1538, 1551 (9th Cir.1996)).  A warrant cannot pass constitutional muster if the scope of the related search or seizure exceeds that permitted by the terms of the validly issued warrant. *Al-Kidd v. Ashcroft,* 598 F.3d 1129, 1134 n.3 (9th Cir.), *cert. denied,* 131 S.Ct 415 (2010).

---

[4] In *Zurcher v. Stanford Daily*, 436 U.S. 547, 98 S.Ct. 1970 (1978), government agents obtained a warrant to search the offices of the Stanford Daily for photographs that might reveal the identity of protesters who had assaulted policemen during a campus disturbance. *Id.* at 548, 98 S.Ct. 1970. There was no claim that Stanford Daily photographers or employees were themselves the assailants. *See id.* The Supreme Court held the warrant was valid, despite the fact that members of the Stanford Daily were not suspected of having done anything wrong: "[V]alid warrants may be issued to search any property, whether or not occupied by a third party, at which there is probable cause to believe that fruits, instrumentalities, or evidence of a crime will be found." *Id.* at 554, 98 S.Ct. 1970

When considering "[w]hether a search exceeds the scope of a search warrant," the court must engage in "an objective assessment of the circumstances surrounding the issuance of the warrant, the contents of the search warrant, and the circumstances of the search." *United States v. Hitchcock*, 286 F.3d 1064, 1071 (9th Cir.), *amended by* 298 F.3d 1021 (9th Cir.2002); accord *United States v. Hurd*, 499 F.3d 963 (9th Cir. 2007) (objectively reasonable for police to believe that search of defendant's residence was authorized, despite judge's failure to initial the appropriate line on the warrant), *cert. denied*, 552 U.S. 1219 (2008); see *also United States v. Rettig*, 589 F.2d 418, 423 (9th Cir.1978) ("In determining whether or not a search is confined to its lawful scope, it is proper to consider both the purpose disclosed in the application for a warrant's issuance and the manner of its execution.").

### 1.  Circumstances Surrounding the Issuance and Contents of the Warrant

Pursuant to *Hitchcock*, the court has engaged in an objective assessment of the circumstances surrounding the issuance of the warrant, and the contents of the search warrant.  The Court has found, *infra*, that the probable cause existed for the issuance of the warrant and that the warrant statement of probable cause was constitutionally sufficient.  The warrant itself contained a detailed description of the documents and locations to be searched.

### 2.  Circumstances of the Search

Plaintiffs argue that various documents were seized which did not fall within the scope of the warrant.  Plaintiff argues that the "customer jackets,"[5] the personal passports, and personal letters, were not within the scope of the warrant.  Plaintiff argues that search of the "service department records" was not within the scope of the warrant because the service department was not involved in the sale of extended warranties.  (Doc. 146, Opposition p.19-20.)

The warrant authorized seizure of five categories of records, documents and physical evidence:

(1) any and all "Dealer Jackets" (files containing documents pertaining to the purchase and sales of vessels and/or vehicles) and any other documents which may show criminal activity pertaining to the purchase and/or sales of vehicles;

(2) all "computer systems," "computer program or software," and "supporting documentation" as defined by Penal Code section 502, subdivision (b), etc...;

---

[5] The dealer jacket contains information before a boat is sold. All the paperwork is transferred to a "customer jacket" once the boat is sold. Plaintiff contends there would be no information concerning warranties in a dealer jacket; any warranty information would be in a customer jacket. (Doc. 146, Opposition p. 20.)

(3) books, records, receipts, bank statements and records, money drafts, letters of credit, money order and cashier's check receipts, pass books; bank checks; and other items evidencing the obtaining, secreting, transfer, and/or concealment of assets and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money;

(4) identity documents. Indicia of residency, occupancy, and/or ownership of the premises described above including, but not limited to utility and telephone bills, canceled envelopes, safety deposit box keys, passports, drivers' licenses' identity cards, address books, photographs and vehicle registrations; and

(5) answering machines, pagers, and cellular phones. (Doc. 143-2, Search warrant p. 11 of 83.)

In this case, the search warrant authorized the seizure of business documents, including paper documents and computer systems. While plaintiffs argue that the "dealer jackets" are different from the "customer jackets," the warrant authorizes seizure of "any other documents which may show criminal activity pertaining to the purchase and/or sales of vehicles." A search warrant need only be reasonably specific, rather than elaborately detailed. *United States v. Mann*, 389 F.3d at 877. The Statement of Probable Cause supported seizure of customer jackets because customers had indicated that they did not get the warranties that they believe they had purchased. The customer jackets were probative of sales of warranties to customers who did not in fact receive the warranty. A reasonable officer would believe that evidence of criminal activity may be contained in the customer jackets.

Further, the seizure of the passports and letters was not outside the scope of the warrant. Indeed, the warrant specifically authorized seizure of passports. The seizure of "personal letters" does not exceed the scope of the warrant. Sona presents evidence that a letter regarding an immigration hearing and her personal materials used in her position as a professor where taken. (Doc. 146-2, Sona Decl. ¶7-8.) The warrant authorized seizure of "indicia of residency, occupancy, and/or ownership."

An officer is required only to make a reasonable determination that the documents seized fall within the scope of the warrant. *United States v. Hillyard*, 677 F.2d 1336 (9th Cir.1982) (removal for sorting elsewhere sometimes necessary because "the examination of the class of items to determine their contraband character may require such refined legal judgment that it should be conducted by the magistrate, not the officers"); *United States v. Beusch*, 596 F.2d 871 (9th Cir.1979) (As long as an item appears, at the time of the search, to contain evidence reasonably related to the purposes of the search,

13

it may be seized); *United States v. Shi*, 525 F.3d 709 (9th Cir. 2008) (a reasonable determination that the documents seized fall within the warrant does not require having a person fluent in Chinese read Chinese documents before the documents are seized); *see Rettig*, 589 F.2d at 423 ( "Where evidence is uncovered during a search pursuant to a warrant, the threshold question must be whether the search was confined to the warrant's terms.... [T]he search must be one directed in good faith toward the objects specified in the warrant or for other means and instrumentalities by which the crime charged had been committed.)

Here, the seizure of the records is not outside a reasonable determination that the records were covered by the warrant.

**E.     Destruction of Property during Execution of the Search Warrant**

"[O]fficers executing search warrants on occasion must damage property in order to perform their duty." *Dalia v. United States*, 441 U.S. 238, 99 S.Ct 1682 (1979).  "Destruction of property that is not reasonably necessary to effectively execute a search warrant may violate the Fourth Amendment." *Tarpley v. Greene*, 684 F.2d 1 (D.C. Cir. 1982). Rather, only unnecessarily destructive behavior, beyond that necessary to execute a warrant effectively, violates the Fourth Amendment.  *Mena v. City of Simi Valley*, 226 F.3d 1031, 1041 (9th Cir. 2000) ("officers executing a search warrant occasionally must damage property in order to perform their duty."). "The general touchstone of reasonableness which governs Fourth Amendment analysis, … governs the method of execution of [a search] warrant." *U.S. v. Ramirez*, 523 U.S. 65, 71, 118 S. Ct. 992, 140 L. Ed. 2d 191 (1998) ("[e]xcessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful." ); *see Liston v. County of Riverside*, 120 F.3d at 979 ("only unnecessarily destructive behavior, beyond that necessary to execute a warrant effectively, violates the Fourth Amendment").  Therefore, the touchstone of conduct during a search is "reasonableness."

**1.     "Ransacking" the Business Premises**

Plaintiffs argue that the search was unduly destructive resulting in the business premises being "ransacked."  Plaintiffs present evidence that documents were strewn about and that the video surveillance system was disconnected and the "wires ripped from the system." (Doc. 146, Opposition p. 9.)

14

1    The evidence presented by plaintiff does not raise an issue of fact that the "ransacking" was

2    unnecessarily destructive.  Sona testified that she saw officers ransacking the entire office by throwing

3    files. (Doc. 146-2, Sona Decl. ¶19.)  She testifies that she told the officers that she could find what they

4    were looking for.

5          This evidence falls far short of conduct violative of the Fourth Amendment as unnecessarily

6    destructive behavior.  The officers were executing a search warrant for documents, among other items.

7    Within the scope of this search, it would be reasonable to sort and dispose of documents and files.  The

8    issue is whether defendants engaged in unnecessarily destructive behavior beyond that needed to execute

9    the warrant effectively.  Since the evidence is that the defendants were throwing documents about during

10   their documents search, the Court finds that there is no issue of fact as to claim of ransacking the

11   business.

12          **2.        Damage to the Surveillance System**

13          As to the damage of the video surveillance system, the evidence is conflicting as to whether the

14   system was damaged or merely unplugged.  (See Doc. 160-3, Mardig depo p.59.)  The evidence, as

15   viewed most favorable to plaintiff, is that the surveillance "computer portion of the main brain of the

16   camera itself, the wiring was ripped out of the panel."  *Id.*  The evidence establishes that wires were

17   ripped.  *Id.*

18          The evidence does not establish that the damage to the surveillance equipment was

19   "unnecessarily destructive."  The damage to the wires of the surveillance system was not unnecessarily

20   destructive given the scope of the search, including seizure of "computer systems."  The evidence shows

21   the surveillance system was a computer.  The disconnection of the wires and damage thereto were

22   reasonable given that the scope of the search included "computer systems."  To prove that the property

23   damage were unreasonable, plaintiffs would need to show that the property damage was "unnecessarily

24   destructive behavior, beyond that necessary to execute a warrant effectively." *Liston,* 120 F.3d at 979;

25   *Compare San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 971-72

26   (9th Cir.) (concluding a search was unreasonably executed because of the extent of the destruction of

27   property caused by the seizures, i.e., in executing the warrants, the officers cut the mailbox off its post,

28   jack-hammered the sidewalk outside the property, and broke the refrigerator), *cert. denied*, 546 U.S.

1061 (2005).

Moreover, even if defendants did cross over the line in their collection of evidence or removal of the surveillance system, which they did not, a reasonable officer could have believed that throwing or tossing documents during a document search and disconnecting the surveillance system was necessary, and therefore, constitutional. Thus, defendants would be entitled to qualified immunity.

**F.     Excessive Force Claims**

**1.     Presence of Shotguns/Rifles/SWAT Gear**

Plaintiffs claim violation for their constitutional rights against excessive force from the presence of police officers with shotguns, rifles, and SWAT gear. Apparently, plaintiffs' position is that this show of force was unreasonable under the circumstances.

An action is "reasonable" under the Fourth Amendment, regardless of the individual officer's state of mind, "as long as the circumstances, viewed objectively, justify [the] action." *Scott v. United States*, 436 U.S. 128, 138, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978). Police must be allowed to protect themselves before a potential threat of danger develops into a tragedy. *U.S. v. Flippin*, 924 F.2d 163, 166 (9th Cir. 1991).

In this case, the investigators took precautionary measures which are necessary and reasonable. Officers cannot be expected to enter into an unknown environment without protection or opportunity to minimize any potential threat. Officers are not required to endanger their lives or lives of others by stepping into an unknown potentially dangerous environment to execute a search warrant. While the Court acknowledges that no weapons or other dangerous objects were seized, the officers were unaware of the risk of danger, and thus were reasonably prepared to confront the situation. Being armed and wearing protective gear does not violate plaintiffs' rights against excessive force protected by the Fourth Amendment.

**2.     Unholstered Gun by Essegian**

Sona Vartanian alleges that as she approached the cash register in the north building at PMC, Defendant Essegian pointed a handgun in her face. He then waved it and said, "I would not do that if I was you." Plaintiff argues that whether Essegian brandished a firearm and pointed it at plaintiff Vartanian's face is a question of fact. (Doc. 147 Opposition p. 4.)

Essegian denies that he ever took his weapon out of the holster.  Defendant Essegian argues that the allegation Essegian "brandished his unholstered firearm at plaintiff" is insufficient to allege an excessive force claim because this is a search and seizure case.  Defendant argues that Essegian did not act unreasonably because it is expected he would be carrying a firearm and is alleged "only" to brandish the weapon at Sona.

The evidence is disputed as to brandishing the gun.  Sona testifies that Essegian pointed a gun at her face.  She states that "[a]s soon as I touched the cash register, without saying anything, Officer Essegian confronted me with his gun. Officer Essegian was pointing a gun in my face. He then began to wave it back and forth and said 'I would not do that if I was you.'" (Doc. 146-2, Sona Decl. ¶18.) Essegian testifies as to a more sedate encounter with Sona.  (Doc. 144-5, Essegian Decl. ¶14-18.)  He states that when Sona arrived at the search, they exchanged pleasantries.  When she tried to access the computer, he told her not access the computer.  He states that he suggested she go into a different building during the search.  He acknowledges that he had a department issued handgun with him in his holster during the search.  (Doc. 144-5, Essegian Decl. ¶10.)  Thus, this evidence disputes a material issue of fact as to whether a gun was drawn on Sona.

Essegian argues that even if he drew his weapon on Sona, he was reasonable in doing so.

Persons present at a search may not be detained under unreasonable circumstances. *Mena v. City of Simi Valley*, 226 F.3d 1031 (9th Cir. 2000) (officers unreasonably detained resident in handcuffs). Inherent in the authorization to detain an occupant of the place to be search is the authority to use reasonable force to effectuate the detention. *Muehler v. Mena*, 544 U.S. 93, 98, 125 S.Ct 1465 (2005). The manner of detention is evaluated on the basis of what is reasonable in light of the particular circumstance in the case. *Muehler v. Mena*, 544 U.S. at 99-100 (use of handcuffs reasonable in detaining occupant where warrant authorized a search for weapons and a wanted gang member.) *Hansen v. Schubert*, 459 F.Supp.2d 973, 989-91 (E.D. Cal. 2006) (court found lawful: (1) executing officers displaying their weapons and touching occupants in order to move them to the living room; (2) occupants were all forced to remain at the living room table for several hours and were not told that they were free to leave; (3) occupant told that she had to remain in the living room; (4) occupant was escorted to the bathroom; and (5) occupant was not allowed to answer the telephone during the entire period of

the search).

A claim against law enforcement officers for excessive force is analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388, 395, 109 S.Ct. 1865 (1989). The analysis requires evaluating "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396, 109 S.Ct. 1865. The court also considers "whether a warrant was used, ... whether more than one arrestee or officer was involved, ... [and] whether other dangerous or exigent circumstances existed at the time of the arrest." *Chew v. Gates*, 27 F.3d 1432, 1440 n. 5 (9th Cir.1994).

Pointing a gun at a detainee during a search may constitute unreasonable force.  In *Robinson v. Solano County*, 278 F.3d 1007, 1013 (9th Cir. 2002) (*en banc*), the Ninth Circuit addressed whether use of a drawn gun pointed at a detainee's head at close range constituted excessive force.  The Court held that "pointing a gun to the head of an apparently unarmed suspect during an investigation can be a violation of the Fourth Amendment, especially where the individual poses no particular danger." *Robinson*,  278 F.3d at 1015; *Tekle v. United States*, 511 F.3d 839, 845 (9th Cir. 2007) (stating that this court has held that "the pointing of a gun at someone may constitute excessive force, even if it does not cause physical injury.")

Here, the search was conducted on a business premises during daylight hours without exigent circumstances.  There is no evidence Sona was resisting the officer in any way, or that she posed some threat to his safety. Whether excessive force exists for pointing a gun at an unarmed woman, who poses no particular danger, in the midst of a multi-police officer search during daylight hours, in the course of a non-exigent search is a question of fact.

In his reply, Essegian argues that Sona presents a self-serving declaration which states that Essegian brandished his weapon, which is the opposite of what was observed by other witnesses. (See Doc. 170, Reply p. 5, citing to evidence.)  However, the issue of credibility of a witness cannot be determined on summary judgment.  Summary judgment should be denied where an issue of a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility: "Credibility issues are appropriately resolved only after an evidentiary hearing or full trial."

1   *SEC v. Koracorp Industries*, 575 F.2d 692, 699 (9th Cir. 1978), *cert. denied*, 439 U.S. 953 (1978).

2   **G.      Supervisor Liability**

3         Liability for damages claims arising under section 1983 requires plaintiff to demonstrate personal

4   participation by defendant actors. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).  A supervisory

5   official may be liable under Section 1983 only if he or she was personally involved in the constitutional

6   deprivation, or if there was a sufficient causal connection between the supervisor's wrongful conduct and

7   the constitutional violation. *Redman v. County of San Diego*, 942 F.2d 1435, 1446-47 (9th Cir.1991)),

8   *cert. denied,* 502 U.S. 1074 (1992); *Hansen v. Black,* 885 F.2d 642, 646 (9th Cir.1989) (same).

9   Supervisors can be held liable for (a) their own culpable action or inaction in the training, supervision,

10  or control of subordinates; (b) their acquiescence in the constitutional deprivation of which a complaint

11  is made; or (3) for conduct that showed a reckless or callous indifference to the rights of others.

12  *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000).

13        Under no circumstances, however, is there *respondeat superior* liability under § 1983; that is,

14  there is no liability under § 1983 solely because one is responsible for the actions or omissions of

15  another. *Redman v. County of San Diego*, 942 F.2d at 1446.  A supervisor therefore generally "is only

16  liable for constitutional violations of his subordinates if the supervisor participated in or directed the

17  violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d at 1045.

18        The only supervisor identified by the facts is Tom Wilson, who was Silva's supervisor.  Plaintiff

19  alleges that Wilson did not investigate the allegations which were included in the Statement of Probable

20  cause.  This Court has found that the Statement of Probable Cause validly stated probable cause.  Thus,

21  any claim against Wilson for lack of probable cause in the search warrant likewise must fail.

22  **H.      Sona's Detention**

23        Sona argues that she was unreasonably detained during the search.  She presents evidence she

24  was told to sit on a couch and not move, not allowed to get water,[6] or go to the restroom.  She presents

25  evidence that she was barred from going to the restroom and ultimately urinated on herself. (Doc. 146-2,

26  Sona Decl. ¶¶ 19-26.)

27

28        _____

          [6] Sona does not identify who refused to allow her to get water.

                                                19

Officers executing a search warrant have the authority to "detain the occupants of the premises while a proper search." *Muehler v. Mena*, 544 U.S. 93, 98, 125 S.Ct. 1465 (2005) (quoting *Michigan v. Summers*, 452 U.S. 692, 705, 101 S.Ct. 2587 (1981). In *Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587 (1981), the Supreme Court held that officers executing a search warrant for contraband have the authority "to detain the occupants of the premises while a proper search is conducted." *Id.* at 705, 101 S.Ct. 2587. In *Muehler*, the officers' use of force in the form of handcuffs to effectuate Mena's detention in the garage, as well as the detention of the three other occupants, was reasonable because the governmental interests outweighed the marginal intrusion. "An officer's authority to detain incident to a search is categorical; it does not depend on the quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure." *Muehler*, 544 U.S. at 98.

As a generally proposition, detaining Sona for the duration of the search was reasonable, because a warrant existed to search Pacific Marine and she was an occupant of that address at the time of the search. *See Muehler*, 544 U.S. 98 (Plaintiffs' detention for the duration of the search was reasonable, because a warrant existed to search the address and she was an occupant of that address at the time of the search). The officers had the right to detain Sona during the execution of the search warrant. The officers had the authority to restrict movement around the business premises. There is no issue of fact that the officers may lawfully detain persons during the execution of a search warrant.

However, a detention during a search warrant must be reasonable. "[A] detention conducted in connection with a search may be unreasonable if it is unnecessarily painful, degrading, or prolonged." *Franklin v. Foxworth*, 31 F.3d 873, 875 (9th Cir.1994). While executing a search warrant, officers may detain an occupant of a residence in a manner reasonable under the circumstances. *Dawson v. City of Seattle*, 435 F.3d 1054, 1066 (9th Cir.2006).

Sona claims that she was unreasonably detained because she was barred from getting water and not permitted to use the restroom.

In *Heitschmidt v. City of Houston*, 161 F.3d 834, 837-38 (5th Cir.1998), the court held that plaintiff was unlawfully detained in the execution of a search warrant. Plaintiff was pushed onto the trunk of his car, handcuffed in public, was in pain, and was denied the use of the bathroom during a search that lasted approximately 4 hours. The Ninth Circuit has cited *Heitschmidt* characterizing the

events of handcuffing and denying a plaintiff bathroom breaks during the search of his residence is outside the permissible scope of the detention. *See Ganwich v. Knapp*, 319 F.3d 115, 1124 n. 15 (9th Cir. 2003). In *Campbell v. City of Bakersfield*, 2006 WL 2054072 (E.D.Cal. 2006), the court held that denials of three requests to use the restroom during a 9-hour search, without an offer of an escort to the restroom, raised an issue of fact as to a constitutional violation. A complete denial of the usage of the toilet over the period of many hours, might give rise to a constitutional violation.

Here, the search was conducted over a four hour period. During that time, the evidence, in light most favorable to Sona, shows Sona asked to use the restroom one time. (Doc. 146-2, Sona Decl. ¶ 25 ("I was prevented from using the restroom when one of the officers blocked the bathroom door.").) One request to use the restroom over a four hour period is not a constitutional violation. The duration of the detention was not prolonged, and the single request is insufficient to establish the detention was unreasonable.

Regardless of whether a violation existed, Sona fails to present evidence of who prevented her from using the restroom. Plaintiff testifies that "one officer" blocked her access. She does not identify which officer denied her access, or to whom she made her request to use the restroom. Liability under §1983 can be established by showing that the defendants either personally participated in a deprivation of the plaintiff's rights, or caused such a deprivation to occur. *Harris v. City of Roseburg,* 664 F.2d 1121, 1125 (9th Cir. 1981). Sona has the burden of establishing who participated in the purported deprivation of her rights. Sona has not shown who participated or otherwise caused her harm. Accordingly, she has failed to raise an issue of fact as to her detention.

## I.      Qualified Immunity

Each officer involved in the search or who approved the search argues that he is entitled to qualified immunity. Silva argues he conducted his investigation appropriately and sought the warrant in question in good faith. There is no evidence of intentional falsehoods or recklessness on the part of Silva or any other defendant. The other defendants argue they assisted with the search pursuant to a facially valid warrant and did so without using any force whatsoever. (Doc. 143-1, State Brief p.16.)

Plaintiffs argue that none of the officers are entitled to qualified immunity for the search warrant because the warrant was obtained through judicial deception. (Doc. 146, Opposition p.18.) Silva did

1  not conduct a proper investigation in that he took the "word" of two confidential informants without

2  verifying their statements.  Silva did not have a reasonable belief he had probable cause and used false

3  statements, reckless disregard of the truth and omissions to obtain the search warrant.

4       Sona argues that Essegian is not entitled to qualified immunity because he violated a clear

5  constitutional right when he pointed a gun at Sona's face.  (Doc. 147, Opposition p.7.)  Sona argues that

6  in light of the circumstances of the case, pointing a gun was a clear constitutional violation and excessive

7  force.

8       **1.       Qualified Immunity for the Search Warrant and Execution of the Warrant**

9       Law enforcement officers are entitled to qualified immunity if they act reasonably under the

10  circumstances, even if the actions result in a constitutional violation.  *Ramirez v. Butte-Silver Bow*

11  *County*, 298 F.3d 1022, 1027 (9th Cir. 2002), *cert. denied*, 298 F.3d 1022.  Qualified immunity serves

12  to shield government officials "from liability for civil damages insofar as their conduct does not violate

13  clearly established statutory or constitutional rights of which a reasonable person would have known."

14  *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982).  Qualified immunity thus serves to

15  protect "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475

16  U.S. 335, 341, 106 S.Ct. 1092 (1986).  In ruling on a qualified immunity defense, a court must consider

17  two questions.  First, "[t]aken in the light most favorable to the party asserting the injury, do the facts

18  alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201,

19  121 S.Ct. 2151 (2001).   Second, an inquiry into whether the plaintiff alleges a deprivation of a

20  constitutional right and was that right clearly established.  *Saucier v. Katz*, 533 U.S. at 201; *Sorrels v.*

21  *McKee*, 290 F.3d 965, 969 (9th Cir. 2002).  "The relevant, dispositive inquiry in determining whether

22  a right is clearly established is whether it would be clear to a reasonable officer that his conduct was

23  unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. This inquiry is wholly objective, and

24  defendant's subjective belief as to the lawfulness of his or her conduct is irrelevant.  *Sorrels*, 290 F.3d

25  at 970.  Courts have "discretion to grant qualified immunity on the basis of the 'clearly established'

26  prong, alone, without deciding in the first instance whether any right had been violated." *James v.*

27  *Rowland*, 606 F.3d 646, 651 (9th Cir. 2010)

28       As  previously  discussed,  plaintiffs  have  failed  to  show  that  defendants  violated  their

22

1    constitutional rights because defendants were executing a valid search warrant, and as a result,

2    defendants are protected from plaintiffs' § 1983 claims by the doctrine of qualified immunity. Plaintiffs

3    cannot satisfy the first prong of the test for overcoming a qualified immunity defense.  Plaintiffs'

4    constitutional rights were not violated in obtaining the search warrant or the execution of the warrant,

5    except as specifically noted in this order.  Any officer involved in Sona's detention or who denied Sona's

6    one request to use the restroom was acting reasonably. Therefore, all officers who were involved in these

7    acts are protected by qualified immunity.

8               **2.**      **Qualified Immunity as to Officer Essegian**

9       Essegian argues that he is immune.  He argues that he did not touch Vartanian, did not discharge

10    his weapon and did not point it at her or even remove it from its holster.  (Doc. 144-1, Moving papers

11    p. 13-14.)  He argues that even if he violated a constitutional right, "there is no law that is [sic] clearly

12    establishes liability against an [sic] Deputy who relies on the facial validity of a warrant to assist in

13    conducting a search.  There is no law that clearly establishes that an officer cannot remove his weapon

14    from a holster during the execution of a search warrant." *Id.*

15       Here, to defeat Officer Essegian' claim of qualified immunity, plaintiffs must show that the act

16    of drawing the gun and pointing it at Sona "was such a far cry from what any reasonable [officer] could

17    have believed was legal" that Officer Essegian knew or should have known he was breaking the law.

18    *See Sorrels*, 290 F.3d at 971. "It is not necessary that the alleged acts have been previously held

19    unconstitutional, as long as the unlawfulness [of defendants' actions] was apparent in light of preexisting

20    law." Id. at 970.

21       In his reply, Essegian argues that even if he had drawn his weapon, it would have been

22    reasonable.  Sona approached the cash register, and she had been told she could not access the cash

23    register but approached it nonetheless.  She could have tampered with evidence, taken evidence or

24    gained access to a weapon.  In light of these circumstances, drawing the weapon was reasonable. (Doc.

25    170, Reply p. 7.)

26       Here, there is an issue of fact as to whether it would be clear to a reasonable officer that pointing

27    a gun at Sona in the situation the officer faced was unreasonable.  The search of Pacific Marine was non-

28    exigent, on a business premises during daylight hours.  The sole evidence is that Sona was cooperating

1   and did not pose a threat to his safety. As stated previously, whether pointing a gun at an unarmed

2   woman, who poses no particular danger, in the midst of a multi-police officer search during daylight

3   hours, in the course of a non-exigent search is a jury question.

4   **J.      Liability for Observing and not Preventing Unconstitutional Conduct**

5         For each defendant, plaintiffs argue that the defendants are liable for any unconstitutional

6   conduct that they did not stop, citing *Summer v. Tice*, 33 Cal.2d 80 (1948), *Allen v. U.S.*, 588 F. Supp.

7   247 (D. Utah 1984) and *U.S. Koon*, 833 F.Supp. 769 (C.D. Cal. 1993).  (Doc.148, Opposition re Imirian

8   p.4; Doc. 147, Opposition re Essegian p. 8-9.)

9         Each of these authorities are inapplicable to the alleged constitutional violations under §1983.

10  Liability may be imposed on an individual defendant under section 1983 if the plaintiff can show that

11  the defendant proximately caused the deprivation of a federally protected right.  *See Leer v. Murphy*, 844

12  F.2d 628, 634 (9th Cir.1988); *Harris v. City of Roseburg*, 664 F.2d 1121, 1125 (9th Cir.1981). A person

13  deprives another of a constitutional right within the meaning of section 1983 if he does an affirmative

14  act, participates in another's affirmative act or omits to perform an act which he is legally required to do,

15  that causes the deprivation of which the plaintiff complains. *See Leer*, 844 F.2d at 633.  The "requisite

16  causal connection can be established not only by some kind of direct personal participation in the

17  deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably

18  should know would cause others to inflict the constitutional injury." *Johnson v. Duffy*, 588 F.2d 740,

19  743 (9th Cir.1978).  Under *Leer v. Murphy*, 844 F.2d 628, 633-34 (9th Cir.1988), the Plaintiffs will need

20  to show how the deliberate indifference or affirmative actions of each Defendant caused a constitutional

21  violation before they can seek monetary damages against any individual Defendant.  *Motley v. Parks*,

22  432 F.3d 1072, 1082 (9th Cir. 2005) (merely being present at the scene of an alleged constitutional

23  violation, without personal participation, is insufficient to hold an individual officer liable).

24        Here, no officer is liable for merely being present at the scene.  Even if a constitutional violation

25  occurred at some point during the search, plaintiff has not shown direct participation in the violation by

26  each defendant or that the particular defendant set in motion acts by others.  Plaintiffs' wholesale

27  grouping of conduct cannot establish a constitutional violation by the individual officers.

28

**K.    Search of Jack Vartanian's Vehicle**

In their opposition, plaintiffs assert that Defendant Essegian searched an automobile in direct violation of the warrant. They further allege that Defendant Essegian conducted a parole search of Hagop (Jack) Vartanian without reasonable suspicion that he violated the terms of his parole.   Plaintiffs argue:

> "This car search violated Jack's Fourth Amendment rights in that it was unreasonable, was beyond the scope of the search warrant and violated Jack's parole search terms that his parole officer was to be contacted before any search of Jack Vartanian or his property."   (Doc. 147, Opposition).

Plaintiffs do not offer any evidence the vehicle which was searched was owned, operated or controlled by Plaintiffs. (JJSUMF No. 52 & reply). The vehicle was driven by Jack Vartanian and Jack Vartanian was the owner of the subject vehicle.  In a Fourth Amendment claim, "[t]o establish actual standing, the [plaintiff] must demonstrate that he was the victim of an invasion of privacy." *United States v. Cella*, 568 F.2d 1266, 1280 (9th Cir.1977).  Since there is no evidence that the vehicle was in any way owned, controlled, operated by plaintiffs, plaintiffs' constitutional rights were not violated. To extent plaintiffs allege a violation of their constitutional rights as to the search of the vehicle and of Jack Vartanian, the motion for partial summary judgment is granted.

The Court agrees with defendant Essegian, plaintiffs seek to assert the rights of Jack Vartanian for search of his vehicle and of his person. Neither Sona Vartanian nor Pacific Marine has standing to assert any alleged injury to Jack Vartanian.

**L.    Imirian's Derogatory Remarks to Mardig Vartanian**

In their opposition, plaintiffs seek hold to Officer Imirian responsible for ethnic comments made to Mardig Vartanian.  Plaintiffs assert that ethnic slurs were made to "denigrate the Vartanian family as a whole and Sona Vartanian, his mother, in particular."

Neither Pacific Marine nor Sona has standing to assert defamation claims on behalf of Mardig Vartanian.

To the extent Sona Vartanian seeks some constitutional violation for defamation, the motion will be granted.  This Court dismissed the constitutional defamation claim in a prior motion.  (See Doc. 19, Order on Motion to Dismiss.)

Defamation is not a constitutional claim.  An injury to reputation alone is not sufficient to

establish a deprivation of a liberty interest protected by the Constitution. *Paul v. Davis*, 424 U.S. 693, 701, 711, 96 S.Ct. 1155 (1976).  In *Paul v. Davis*, the Supreme Court clarified that procedural due process protections apply to reputational harm only when a plaintiff suffers stigma from governmental action plus alteration or extinguishment of "a right or status previously recognized by state law." *Paul v. Davis,* 424 U.S. at 711.  "[P]etitioners' defamatory publications, however seriously they may have harmed respondent's reputation, did not deprive him of any 'liberty' or 'property' interests protected by the Due Process Clause." *Id.*; *see also WMX Tech., Inc. v. Miller*, 197 F.3d 367, 374 (9th Cir. 1999) ("[R]eputation, without more, is not a protected constitutional interest.")

## CONCLUSION

For the foregoing reasons, the Court Orders as follows on the three motions:

1.      The Court GRANTS the motion for summary judgment by George Imirian;

2.      The Court GRANTS the motion for summary judgment by Dan Ayala, Kevin Buchanan, Gideon Coyle, Dan Horsford, Scott Silva, Chris Wagner, and Tom Wilson;

3.      The Court GRANTS the motion for partial summary judgment by Edward Essegian as to all claims except as to the claim for excessive force for pointing a gun at Sona Vartanian.

IT IS SO ORDERED.

**Dated:    August 18, 2011**            /s/ Lawrence J. O'Neill
                                                  UNITED STATES DISTRICT JUDGE